**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | CHAPTER 11 |
| COMER ENTERPRISES, INC., | Case No. 19-15182 (MDC) |
| Debtor. | |

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

Dated: February 14, 2020

SMITH KANE HOLMAN, LLC
Robert M. Greenbaum, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
(610) 407-7216 Phone
(610) 407-7218 Fax
rgreenbaum@skhlaw.com

Comer Enterprises, Inc. (the "Debtor"), proposes the following Chapter 11 Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101, et seq.

# Article I
# Definitions

For the purposes of this Plan, each of the terms listed below shall have the meaning given to it in this Article (such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires). Any term defined in the Code and not otherwise defined herein shall have the meaning specified in the Code unless the context otherwise clearly requires. Without limitation of the foregoing, other terms have the meanings given elsewhere in the Plan:

1.1    "Administrative Claim": a claim under Sections 503(b) of the Code that is entitled to priority under Section 507(a)(2) of the Code.

1.2    "Allowed Claim": (a) a Claim that has been allowed by a Final Order; or (b) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed, nor contingent, and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of the time fixed by the Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which claim either an objection to the Claim or an application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

1.3    "Assets": all of the Debtor's right, title and interest in, to and under any and all property, real and personal, tangible and intangible, leases, rents payable and all amounts due under any leases, goods, chattel paper, documents, instruments, money, fixtures, furniture, accounts receivable, contract rights, causes of actions, Causes of Action, claims and rights of any kind, payments, wherever situated, together with the proceeds thereof.

1.4    "Bankruptcy Code" or "Code": Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

1.5    "Bankruptcy Court" or "Court": The United States Bankruptcy Court for the Eastern District of Pennsylvania.

1.6    "Bankruptcy Rules": The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States, which Bankruptcy rules become effective on August 1, 1987, as amended from time to time.

1.7    "Business Day": any day except a Saturday, Sunday, or other day on which commercial banks located in Pennsylvania are authorized by law to close.

1.8    "Case": the reorganization case of the Debtor under Chapter 11 of the Code as above captioned.

1.9 "Causes of Action": all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

1.10 "Claim": the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, liquidated, legal, equitable, secured or unsecured, and as such term is defined in Section 101(5) of the Code, against the Debtor and/or, pursuant to Section 102(2) of the Code, any of the Debtor's Assets.

1.11 "Claimant": the holder of a Claim.

1.12 "Class": a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan and Sections 1122 and 1123(1) of the Code.

1.13 "Confirmation Date": the date on which the Court enters on the Court's docket, the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Code.

1.14 "Confirmation Order": the Order of the Court confirming the Plan pursuant to Section 1129 of the Code.

1.15 "Contested Claim": any Claim as to which the Debtor or any other party in interest have interposed an objection, in accordance with the Code and Bankruptcy Rules, which objection has not been determined by a Final Order.

1.16 "Creditor": the holder of a Claim against the Debtor.

1.17 "Disbursement Account": the account established from which funds will be disbursed in accordance with the terms of the Plan.

1.18 "Disputed Claim": any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part in accordance with the Plan.

1.19 "Distribution": any payment by the Debtor to a Creditor on account of a Claim.

1.20 "Effective Date": The first Business Day which is at least fifteen (15) days after the entry of the Confirmation Order.

1.21 "Final Order": (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other

3

agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

  1.22 "Gross Profit": Debtor's gross receipts <u>less</u> the cost of goods sold as more fully set forth in the Debtor's 3 Year Quarterly Projections as approved by the Bankruptcy Court at the Confirmation Hearing.

  1.23. "Impaired Claimant": a Claimant holding a claim in an Impaired Class.

  1.24 "Impaired Class": any Class of Claims which is not "unimpaired" within the meaning of Section 1124 of the Code.

  1.25 "Lien": with respect to any of Debtor's Assets any mortgage, lien, pledge, charge, security interest, lease or other security device or encumbrance of any kind affecting such Assets.

  1.26 "MCA Companies": Influx Capital, LLC ("Influx"), Advantage Capital ("Advantage"), Silver Cup Funding, LLC ("Silver Cup"), Advanced Merchant Services, LLC ("Advanced"), Creative Capital ("Creative"), BMF Capital ("BMF"), Iruka Capital Group ("Iruka"), Mr. Advance LLC ("Mr. Advance"), Penn Capital Funding ("Penn"), and Queen Funding, LLC ("Queen," and collectively with Influx, Advantage, Silver Cup, Advanced, Creative, BMF, Iruka, Mr. Advance and Penn, the "MCA Companies")

  1.27 "Net Income": Debtor's gross profit <u>less</u> payroll and all applicable federal, state and local taxes thereon, <u>less</u> payment of all ordinary operating and business expenses, less payments on account of reorganization expenses, including Administrative Claims, Priority Tax Claims, quarterly payments to the Office of the United States Trustee and all payments to Creditors in Class 1 in the Plan as more fully set forth in the Debtor's 3 Year Quarterly Projections approved by the Bankruptcy Court at the Confirmation Hearing.

  1.28 "Person": an individual, corporation partnership, joint venture, trust, estate, unincorporated company or association, government unit, or any other form of legal entity.

  1.29 "Petition": the Petition under Chapter 11 of the Code, filed by the Debtor with the Court pursuant to which the Case was commenced.

  1.30 "Petition Date": August 18, 2019, the date upon which the Debtor filed its Petition.

  1.31 "Plan": this Chapter 11 Plan, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

  1.32 "Priority Non-Tax Claim":  a Claim or a portion of a Claim for which priority is asserted under Section 507 of the Bankruptcy Code other than 507(a)(8).

  1.33 "Priority Tax Claim": a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Bankruptcy Code.

1.34    "Proof of Claim": the document filed in this proceeding by a Claimant with the Clerk of the Bankruptcy Court in a form acceptable to the Clerk, stating its Claim, the amount, the type, the consideration and/or basis thereto with attachments of all relevant documents.

1.35    "Pro Rata": with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

1.36    "Rejection Claim": any Claim based upon the Debtor's rejection of any executory contract or unexpired lease pursuant to Sections 365 and/or 1123(b)(2) of the Code, either prior to or on the Confirmation Date to the extent of the amount of such Claim which is an Allowed Claim.

1.37    "Reorganized Debtor": the Debtor, as reorganized and existing on the Effective Date.

1.38    "Schedules": the schedules of assets and liabilities heretofore filed by the Debtor with the Office of the Clerk of the Court pursuant to the Bankruptcy Rule 1007, as amended from time to time.

1.39    "Secured Claim": shall mean a Claim that is secured by a valid, perfected and enforceable and unavoidable Lien on any or all of either of the Debtor's Assets; any deficiency in the value of the interest of the holder of the Secured Claim in such property, shall be treated as an Unsecured Claim.

1.40    "Unimpaired Claimant": a Claimant holding a claim in an Unimpaired Class.

1.41    "Unimpaired Class": any Class of Claims under the Plan which is not "impaired" within the meaning of Section 1124 of the Code.

1.42    "Unsecured Claim": a Claim, to the extent of the amount of such Claim which is an Allowed Claim, including a Rejection Claim or default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than a Secured Claim, Administrative Claim or a Priority Tax Claim.

Any term defined in the Code and not otherwise defined herein shall have the meaning specified in the Code unless the context otherwise clearly requires.

## ARTICLE II
## Treatment of Administrative Expenses and Priority Tax Claims

    2.1    <u>Treatment of Administrative Claims</u>.  Allowed Administrative Claims incurred and/or arising after the Petition Date entitled to priority in accordance with Section 507(a)(2) of the Code, shall be paid by the Debtor, except to the extent that any Claimant agrees to different treatment, (i) in cash on the Effective Date, or (ii) in accordance with the credit terms extended by the creditor of such obligations, or (iii) as required by law, or (iv) in the case of professionals employed at the expense of the estate upon the entry of a Final Order allowing such Claim or as otherwise permitted under the Plan or under the Bankruptcy Rules in an amount and in increments no less than as referenced in the Debtor's 3 Year Quarterly Projections attached to the Debtor's Disclosure Statement as Exhibit "A."

    2.2    <u>Treatment of Priority Tax Claims</u>.  Allowed Priority Tax Claims shall be paid by the Debtor, in cash, in an amount equal to such Allowed Priority Tax Claim, plus interest at a rate of 4% per annum, in equal monthly installments commencing on the first Business Day of the month following the Effective Date and continuing through March 2023, or as otherwise agreed by the Taxing Authority, pursuant to Section 1129(a)(9)(C).

    The Debtor has two creditors holding Priority Tax Claims: (i) IRS filed a Priority Tax Claim in the amount of $30,814.26 (this is a Disputed Claim) and (ii) PA DOR filed a Priority Tax Claim of in the amount of $122,314.27.

    Total Monthly Installment Payments of $3,533.52 shall be made to the holders of Allowed Priority Tax Claims in accordance with the Debtor's 3 Year Quarterly Projections attached to the Debtor's Disclosure Statement as **Exhibit "A."**

    2.3    <u>Voting</u>.  As provided in section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in this Section.

    2.4    <u>Professional Compensation and Reimbursement Claims</u>.  All parties seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date under sections 330 or 331 of the Code shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is 60 days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, on the later of the Effective Date and the date upon which such Administrative Claim becomes an Allowed Administrative Claim, or  upon such other terms as may be mutually agreed upon between such holder of an Administrative Claim and the Reorganized Debtor.

## ARTICLE III
### Classification of Claims

For purposes of this Plan, Claims are divided into the Classes set forth in this Article. This classification of Claims is made for purposes of voting on the Plan and making distributions hereunder and for ease of administration hereof.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that it has not been paid, released or otherwise satisfied prior to the Effective Date.

| Class | Status |
|---|---|
| Class 1 (A) – Santander Bank, N.A. Secured Claim No. 1 | Unimpaired |
| Class 1 (B) – Santander Bank, N.A. Secured Claim No. 2 | Unimpaired |
| Class 1 (C) – Santander Bank, N.A. Secured Claim No. 3 | Impaired |
| Class 2 – General Unsecured Claims | Impaired |
| Class 3 – Interests | Impaired |

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for the purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(7) of the Bankruptcy Code.

## ARTICLE IV
### Treatment of Classes of Claim

  4.1 **Class 1(A). (Santander Bank, N.A. Secured Claim).**

    (a) **Impairment and Voting.**  Class 1(A) consists of the Secured Claims of Santander Bank, N.A. ("Santander Bank") by virtue of its UCC-1 liens on all assets of the Debtor securing the Debtor's obligations to Santander Bank under SBA Loan No. xxx7001 dated June 26, 2018 in the original principal amount of $2,361,000.00.   Santander Bank's Secured Claim is Unimpaired and, thus, Santander Bank is not entitled to vote to accept or reject the Plan on account of its Class 1(A) Secured Claim.

    (b) **Treatment**.  From and after the Effective Date, the Debtor will continue to pay its monthly SBA Loan payments of $25,923.00 to Santander Bank in the ordinary course pursuant to the existing SBA loan documents.  Santander Bank shall retain its liens on the aforementioned collateral to the same extent, priority and validity as it held as of the Petition Date.

    4.2    **Class 1(B). (Santander Bank, N.A. Secured Claim).**

    (a)    **Impairment and Voting.** Class 1(B) consists of the Secured Claims of Santander Bank, N.A. ("Santander Bank") by virtue of its UCC-1 liens on all assets of the Debtor securing the Debtor's obligations to Santander Bank under SBA Loan No. xxx7005 dated June 26, 2018 in the original principal amount of $270,000.00. Santander Bank's Secured Claim is Unimpaired and, thus, Santander Bank is not entitled to vote to accept or reject the Plan on account of its Class 1(B) Secured Claim.

    (b)    **Treatment**. From and after the Effective Date, the Debtor will continue to pay its monthly SBA Loan payments of $2,863.77 per month to Santander Bank in the ordinary course pursuant to the existing SBA loan documents. Santander Bank shall retain its liens on the aforementioned collateral to the same extent, priority and validity as it held as of the Petition Date.

    4.3    **Class 1(C). (Santander Bank, N.A. Secured Claim).**

    (a)    **Impairment and Voting.** Class 1(C) consists of the Secured Claims of Santander Bank, N.A. ("Santander Bank") by virtue of its UCC-1 liens on all assets of the Debtor securing the Debtor's obligations to Santander Bank under SBA Loan No. xxx7002 dated June 26, 2018 in the original principal amount of $200,000.00. Santander Bank's Secured Claim is Impaired and, thus, Santander Bank is entitled to vote to accept or reject the Plan on account of its Class 1(C) Secured Claim.

    (b)    **Treatment.** From and after the Effective Date, the Debtor and Santander shall convert SBA Loan No. xxx7002 from a line of credit into a term loan with a principal balance of $199,824.00, amortized over eight (8) years at six (6%) interest, make monthly principal and interest payments of $2,625.97 starting in 2020 and continuing through 2028 to Santander Bank pursuant to the revised and modified SBA loan documents. Santander Bank shall retain its liens on the aforementioned collateral to the same extent, priority and validity as it held as of the Petition Date.

    4.4    **Class 2. (General Unsecured Claims)**.

    (a)    **Impairment and Voting.** Class 2 consists of Unsecured Claims, including any Deficiency Claims. The Unsecured Claims are Impaired and, thus, said Claimants are entitled to vote to accept or reject the Plan.

    (b)    **Treatment**. The Debtor shall make twelve (12) quarterly payments in the *minimum amount* of $50,000 per quarter to be shared on a Pro Rata basis by Claimants holding Allowed Unsecured Claims commencing at the end of the quarter immediately following the Effective Date, which at this juncture is projected to be June 30, 2020. Specifically, the Debtor's quarterly Plan payments to Class 2 Unsecured Creditors shall be in an amount equal to ten (10%) percent of the Debtor's quarterly "Gross Profit" (defined in par.1.22 above) accumulated by the Debtor over that quarter in the minimum amount of $50,000; if, *and specifically conditioned upon the Debtor earning a quarterly "Net Income"* (defined in par.1.27 above), the Debtor shall increase its quarterly Plan payment over the minimum $50,000 by an amount necessary to bring its quarterly distribution equal ten (10%) percent of its quarterly Gross

8

Profit. Again, in any quarter that the Debtor fails to earn a Net Profit, the quarterly Plan distribution shall be $50,000. Per the Debtor's 3 Year Quarterly Projections, the Debtor projects its first post-confirmation quarterly Net Profit to occur in the second quarter of 2021.

The treatment and consideration to be received by holders of Class 2 Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims. Based upon the General Unsecured Claims scheduled by the Debtor, filed by Creditors and the anticipated deficiency claims, including the MCA Companies, the Debtor estimates an aggregate pay out on account of Class 2 Allowed Claims in the amount of $775,500.00 or a return over a three (3) year period to such holders of General Unsecured Claims of no less than *approximately* 18%; if the Debtor successfully prevails on its proposed Claim objections, the estimated return to Class 2 Unsecured Creditors could increase from 18% to over 50% of Allowed Unsecured Claims. See the Debtor's 3 Year Quarterly Projections attached to the Debtor's Disclosure Statement as **Exhibit "A."**

       4.5    **Class 3. (Interests)**.

       (a)    **Impairment and Voting.** Class 3 consists of all Interests in the Debtor. As of the Plan filing, the Debtor is aware of only one Interest Holder with 100% of the Debtor's voting shares: Nicole B. Comer. Class 4 is impaired and consequently the holder of the Class 4 Interest is entitled to vote on the Plan.

       (b)    **Treatment**. On the Effective Date, all Interests in the Debtor shall transfer and become Interests in the Reorganized Debtor for the purpose of fulfilling the obligations of the Reorganized Debtor under the Plan; however, the holder of Interests shall not receive any distributions on account of such Interests, unless and until all Creditors are paid in full in accordance with the Plan.

## ARTICLE V
### Execution and Implementation of the Plan

       5.1    Means of Execution/Funding. The funds necessary for the implementation of the Plan shall be utilized from (1) the cash accumulated during the Debtor's Chapter 11 Case (2) from the Debtor's Quarterly Net Income over a 3-year period and (3) the recoveries, if any, from the Preference Actions referenced below in par. 5.4. **Exhibit "A"** to the Debtor's Disclosure Statement consists of the Debtor's 3 Year Quarterly Projections – an estimate of its Net Income for the first three (3) years after the entry of the Confirmation Order through the first quarter of 2023. Unless otherwise provided herein, the proceeds from these funding sources shall be deposited by the Debtor into the Disbursement Account set forth in 5.3 below.

       5.2    Good Faith. This Plan is proposed by the Debtor in good faith in the belief that more will be realized by the Claimants than would be the case if the Assets of the Debtor were liquidated under Chapter 7 of the Code.

       5.3    Disbursement Account. The Debtor intends to open and establish a Disbursement Account for the purpose of funding its obligations pursuant to this Plan and making Distributions consistent with the Plan. The Debtor shall retain a disbursing agent to

facilitate the Debtor's quarterly payments authorized under the Plan. Once selected, the Debtor will file a supplement to the Plan in accordance with Local Bankruptcy Rule 3016-1setting forth (a) the name of the prospective disbursing agent, (b) the duties to be performed by the disbursing agent, (c) the amount and costs of a bond or the reasons why a bond is not required and (d) the method and source of payment of the disbursing agent.

    a. **Distributions from Disbursement Account**. Distributions to holders of Allowed Claims will be made as follows: (i) at the address set forth on the respective Proofs of Claim filed by holders of such Claims, (ii) at the address set forth in any written notice of address change delivered to the Debtor or Debtor's counsel after the date of filing of any Proof of Claim or (iii) at the address reflected in the Debtor's Schedules, if no Proof of Claim has been filed and the Debtor or his counsel have not received a written notice of change of address. Distributions must be cashed within three (3) months of the date of distribution.

    b. **Undeliverable and Unclaimed Distributions**. If any Allowed Claimant's distribution is returned to the Debtor as undeliverable, the Debtor will take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim. Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above shall be aggregated and redistributed by the Debtor to the holders of Allowed Claims.

  5.4 **Causes of Action**. The Debtor shall have the exclusive right, but shall be under no obligation, to pursue Causes of Action allowed under applicable law or under the Bankruptcy Code. The Debtor shall prosecute all Causes of Action diligently so as to conclude such actions as soon as practicable. The proceeds from any Causes of Action shall be deposited into the Disbursement Account and used to pay Claimants consistent with this Plan. Specifically, as of the Plan filing date, the Debtor has issued preference demand and settlement letters to many of the MCA Companies and other entities who received transfers from the Debtor within the ninety (90) days prior to the Petition Date and which (the Debtor asserts) meets the criteria for avoidance and recovery under Section 547(b) of the Bankruptcy Code. The Debtor intends to pursue such avoidable preferential transfers and, if necessary, may commence adversary proceedings to facilitate the avoidance and recovery of such transfers (the "Preference Actions").

  5.5 **Post-Effective Date Fees and Expenses**. From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

## ARTICLE VI
## Executory Contracts and Unexpired Leases

  6.1 Pursuant to Section 365 of the Code, the Debtor has the right to reject executory contracts or leases in the Debtor's reasonable business judgment. All executory contracts are rejected pursuant to Sections 365 and 1123(b)(2) of the Code upon the Confirmation Date, unless specifically assumed pursuant to the Plan or by separate motion. Any Claim for damages arising by reason of the rejection of any executory contract or unexpired

10

lease will constitute a Class 2 Claim.

      6.2    Claims arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the Debtor or, on and after the Effective Date, the Reorganized Debtor, by no later than 30 days after the later of (i) notice of the entry of an order approving the rejection of such executory contract or unexpired lease (including, if applicable, the Confirmation Order), and (ii) such other date as may be fixed by order of the Bankruptcy Court.  All such Claims not filed within such time will be forever barred from assertion against the Debtor and its estate and the Reorganized Debtor and its property.  Nothing herein shall be deemed to extend the deadline to file a proof of claim with respect to any executory contract or unexpired lease previously rejected by the Debtor.  Any Rejection Claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Class 3 Claim.

## ARTICLE VII
## Objections to Claims

      7.1    Within sixty (60) days after the Effective Date, objections to Claims may be filed with the Court by the Debtor.  Any such objection shall be served upon the United States Trustee and the Claimant holding the Claim to which objection is made.

## ARTICLE VIII
## Acceptance or Rejection of Plan
## Effect of Rejection of Plan by One or More Classes

      8.1    *Impaired Classes to Vote*.  Each Claimant who is a member of an Impaired Class under this Plan is entitled to vote, if either (i) a Claim has been scheduled by the Debtor, or (ii) the Creditor has filed a Proof of Claim on or before the Bar Date.

      8.2    *Acceptance of Class of Claimants*. Each Class of Claimants shall have voted to accept the Plan if the Plan is accepted by Claimants of such Class that hold at least two-thirds of the aggregate dollar amount and more than one-half in the number of the Allowed Claims of Claimants of such Class that vote to accept or reject the Plan.

      8.3    *Confirmation Pursuant to Section 1129(b)*.  In the event that a sufficient number of holders of a particular Class of Claims do not accept the Plan, then the Debtor requests confirmation of the Plan pursuant to Section 1129(b) of the Code or as otherwise authorized under the Code.

## ARTICLE IX
## Post-Confirmation/Discharge

      9.1    *Title to Assets*.  On and after the Effective Date, all assets of the Debtor's estate shall vest in the Reorganized Debtor free and clear of any and all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges and claims of every kind whatsoever unless otherwise provided herein.  Notwithstanding the foregoing, all valid liens, mortgages, pledges and other security interests in favor of holders of Secured Claims shall remain in full force and effect and shall not be discharged or impaired

by the confirmation or implementation of the Plan and shall survive unaffected by the reorganization contemplated by the Plan.

        9.2    Discharge of Liabilities.  Pursuant to 11 U.S.C. Section 1141(d)(1), the Debtor shall be discharged and released of all Claims arising prior to the Effective Date, other than those Claims arising pursuant to and in accordance with the terms of the Plan.

        9.3    Filing of Additional Documents.  On or before the Confirmation Date, the Debtor shall file with the Court such agreements, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

        9.4    Automatic Stay.  Pending the closing of the case pursuant to Section 350(a) of the Code, and/or until the Debtor receives a discharge from the Court, the stay imposed by Section 362 of the Code shall remain in effect as to the Debtor.

        9.5    Final Decree.  The Debtor shall move for the entry of a final decree closing the within Chapter 11 case following the Effective Date.

## ARTICLE X
## Injunction Against Interference with Plan

        10.1    No Interference.  Other than as provided herein, no Person may commence any action precluding the implementation and consummation of this Plan, or perform any act, which would have the effect of interfering with the implementation and consummation of this Plan and the payments to be made hereunder.

## ARTICLE XI
## Modification of the Plan

        11.1.    Pre-Confirmation Modification.  At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Code.  In the event there is a modification of the Plan, then the Plan as modified, shall become the Plan.

        11.2    Pre-Consummation Modification.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified, but it may not be modified so that the Plan, as modified, fails to meet the requirements or Sections 1122 and 1123 of the Code.  The Plan as modified under this Section, becomes the Plan only if the Court, after notice and a hearing, confirms such Plan, as modified, under Section 1129 of the Code.

        11.3    Non-Material Modification.  After the Confirmation Date, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely effect the interest of Claimants, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry of the purposes, intent and effect of this Plan.

## ARTICLE XII
### Retention of Jurisdiction

      12.1      The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes:

    (a)    To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and Liens, including, determination of objections to the allowance of claims and amendments to schedules;

    (b)    To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

    (c)    To determine any and all disputes arising under or the Plan;

    (d)    To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

    (e)    To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

    (f)    To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed within one hundred eighty days thereafter;

    (g)    To hear, determine and enforce any Code created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

    (h)    To modify any provision of the Plan to the full extent permitted by the Code;

    (i)    To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

    (j)    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or other wise deemed appropriate to accomplish the Plan's intent and purpose;

    (k)    To grant extensions of any deadline set herein;

    (l)    To enforce all discharge provisions under the Plan;

    (m)    To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtor under the Code, this Plan and as the Court may deem necessary; and

    (n)    To enter a Final Order closing this Case.

## ARTICLE XIII
### Miscellaneous

13.1    Choice of Law. Except to the extent superseded by the Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

13.2    Payment of Such Statutory Fees. All fees payable pursuant to 28 U.S.C. §1930 shall be paid on or before the Effective Date and timely thereafter until the Case is closed.

13.3    Headings. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the terms in this Plan.

13.4    Successors and Assigns. The rights duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such Person.

Respectfully Submitted,

COMER ENTERPRISES, INC.

Date: February 14, 2020    By: /s/ *Nicole B. Comer*
Nicole B. Comer,
President

SMITH KANE HOLMAN, LLC

Date: February 14, 2020    By: /s/ *Robert M. Greenbaum*
Robert M. Greenbaum, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7216
Fax: (610) 407-7218
rgreenbaum@skhlaw.com
Attorneys for the Debtor